UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DOLLIE SUGGARS and KENYA MCGAUGHY, on behalf of THEMSELVES and All Others Similarly Situated, <br><br> *Plaintiffs,* <br><br> v. <br><br> AMAZON.COM, INC., AMAZON.COM. DEDC, LLC, SMX, LLC, and STAFF MANAGEMENT, INC., <br><br> *Defendants*. | COLLECTIVE ACTION <br><br> CASE NO. _____ |

## COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1. Plaintiffs Dollie Suggars and Kenya McGaughy ("Plaintiffs") bring this collective action lawsuit under federal law against Defendants Amazon.com, Inc., Amazon.com.DEDC, LLC, SMX, LLC, and Staff Management, Inc. (collectively, "Defendants") to challenge Defendants' unlawful practice of refusing to pay Plaintiffs, and similarly situated employees, for the time it takes them to proceed through a mandatory anti-theft security screening operation, both after the end of their scheduled shifts and at the start of their 30-minute, unpaid meal periods.

2. Plaintiffs recently worked as overtime-eligible, hourly-paid employees of the Defendants at the Amazon Fulfillment Center in Murfreesboro, Tennessee.

3. Defendants have always required Plaintiffs, along with all similarly situated employees, to proceed through a lengthy anti-theft security screening operation after clocking out at the end of their work shifts and at the start of their 30-minute, unpaid meal periods.

4. Defendants have never compensated Plaintiffs, or any similarly situated overtime-eligible employees, for the time it takes them to proceed through these mandatory security screening operations.

5. These mandatory security screening operations entail waiting in line, walking through a metal detector, periodically being inspected with metal detecting wands, and having bags and personal items searched by security guards.

6. These mandatory security screening operations are designed solely to benefit Defendants by preventing employees from stealing the merchandise contained within the Amazon Fulfillment Center.

7. Proceeding through Defendants' security screening operations is a required job activity for Defendants' employees at the Amazon Fulfillment Center.

8. Through this collective action lawsuit, Plaintiffs seek to obtain relief related to all of this uncompensated work, including, *inter alia,* unpaid wages, unpaid overtime wages, liquidated damages, costs, attorney's fees, and declaratory and injunctive relief.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiffs' claims because they are brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and because they raise a federal question pursuant to 28 U.S.C. § 1331.

2
Case 3:13-cv-00906   Document 1   Filed 09/09/13   Page 2 of 16 PageID #: 2

10. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred within this judicial district.

## PARTIES

### I. Plaintiffs

11. Plaintiff Dollie Suggars is over the age of nineteen (19) and is a resident of Rutherford County, Tennessee. Ms. Suggars worked as a "Picker" at the Amazon Fulfillment Center in Murfreesboro, Tennessee from November 2012 through mid-December 2012.

12. Plaintiff Kenya McGaughy is over the age of nineteen (19) and is a resident of Rutherford County, Tennessee. Ms. McGaughy worked as a "Picker" at the Amazon Fulfillment Center in Murfreesboro, Tennessee from November 2012 through mid-December 2012.

### II. Defendants

#### A. Defendant Amazon.com Inc.

13. Defendant Amazon.com, Inc. ("Amazon.com") is a Delaware corporation with a principal office located at 410 Terry Avenue North, Seattle, Washington 98109-5210, which is located in King County, Washington.

14. At all relevant times, Defendant Amazon.com has been regularly engaged in interstate commerce.

15. At all relevant times, Defendant Amazon.com has been an enterprise within the meaning of § 3(r) and § 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) & (s).

16. At all relevant times, Defendant Amazon.com has been an employer within the meaning of the FLSA, 29 U.S.C. §§ 203, 206-07, of employees working at the Amazon Fulfillment Center in Murfreesboro, Tennessee.

### B. Defendant Amazon.com.DEDC, LLC

17. Defendant Amazon.com.DEDC, LLC ("Amazon-DEDC, LLC") is a Delaware corporation with a principal office located at 410 Terry Avenue North, Seattle, Washington 98109-5210, which is located in King County, Washington.

18. At all relevant times, Defendant Amazon-DEDC, LLC has been regularly engaged in interstate commerce.

19. At all relevant times, Defendant Amazon-DEDC, LLC has been an enterprise within the meaning of § 3(r) and § 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) & (s).

20. At all relevant times, Defendant Amazon-DEDC, LLC has been an employer within the meaning of the FLSA, 29 U.S.C. §§ 203, 206-07, of employees working at the Amazon Fulfillment Center in Murfreesboro, Tennessee.

### C. Defendant SMX, LLC

21. Defendant SMX, LLC ("SMX") is an Illinois corporation with a principal office located at 860 West Evergreen Avenue, Chicago, Illinois 60642-2634, which is located in Cook County, Illinois.

22. At all relevant times, Defendant SMX has been regularly engaged in interstate commerce.

23. At all relevant times, Defendant SMX has been an enterprise within the meaning of § 3(r) and § 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) & (s).

24. At all relevant times, Defendant SMX has been an employer within the meaning of the FLSA, 29 U.S.C. §§ 203, 206-07, of employees working at the Amazon Fulfillment Center in Murfreesboro, Tennessee.

### D. Defendant Staff Management, Inc.

25. Defendant Staff Management, Inc. ("Staff Management") is an Illinois corporation with a principal office located at 4919 Spring Creek Road, Samuel J. Castree, Jr., Rockford, Illinois 61114-6447, which is located in Winnebego County, Illinois.

26. At all relevant times, Defendant Staff Management has been regularly engaged in interstate commerce.

27. At all relevant times, Defendant Staff Management has been an enterprise within the meaning of § 3(r) and § 3(s)(1) of the FLSA, 29 U.S.C. §§ 203(r) & (s).

28. At all relevant times, Defendant Staff Management has been an employer within the meaning of the FLSA, 29 U.S.C. §§ 203, 206-07, of employees working at the Amazon Fulfillment Center in Murfreesboro, Tennessee.

### THE RELEVANT TIME PERIOD

29. The Fair Labor Standards Act ("FLSA") permits plaintiffs to recover unpaid wages and liquidated damages for up to three years prior to the filing of a lawsuit. 29 U.S.C. § 255.

30. The Amazon Fulfillment Center in Murfreesboro, Tennessee opened in 2012.

31. This lawsuit was filed on September 9, 2013. Accordingly, the FLSA allegations set forth herein concern the employment of Plaintiffs and those they seek to represent since the opening of the Amazon Fulfillment Center in Murfreesboro, Tennessee through the resolution of this litigation.

### DEFENDANTS' COMMON BUSINESS PRACTICES

32. Defendants are establishments engaged in related activities performed through a unified operation or common control for a common business purpose of jointly operating a

logistics facility/fulfillment center in Murfreesboro, Tennessee, which shall be referred to herein as the Amazon Fulfillment Center.[1]

33. The Amazon Fulfillment Center consists of one warehouse, where merchandise is stored that can be purchased online through Amazon.com.

34. At the Amazon Fulfillment Center, the hourly-paid warehouse employees perform tasks related to this merchandise, including, but not limited to: receiving deliveries of merchandise; transporting merchandise to its appropriate location within the facility; "picking" purchased merchandise from its storage location, and processing merchandise for shipping.

35. Defendants jointly operate the Amazon Fulfillment Center.

36. The hourly-paid warehouse workers at the Amazon Fulfillment Center are jointly employed by Defendants, are under the common control of Defendants, and perform work that simultaneously benefits Defendants.

37. Defendants require the hourly-paid warehouse workers at the Amazon Fulfillment Center to work scheduled shifts.

38. Defendants require the hourly-paid warehouse workers at the Amazon Fulfillment Center to clock in at time clocks at the beginning of these shifts and to clock out at the same time clocks at the end of these shifts.

39. Defendants pay these employees for all time worked between clock in and clock out, minus a 30-minute break.

---

[1] The present-tense allegations set forth in this section of this complaint shall be read to apply to all relevant times, past and present.

## I. Uncompensated Post-Shift Work

40. Defendants do not pay the hourly-paid warehouse workers at the Amazon Fulfillment Center, including Plaintiffs, for all time spent performing work-related activities after they have clocked out.

41. Specifically, Defendants require these employees to proceed through a lengthy theft-prevention security screening operation after clocking out.

42. As part of this mandatory, post-shift, theft-prevention security screening operation, Defendants require the hourly-paid warehouse employees at the Amazon Fulfillment Center to wait in long security lines leading up to security screening areas close to the facility's exits.

43. Once each employee reaches the security screening area, Defendants require each employee to proceed through a metal detector.

44. If the metal detector's alarm sounds and the employee cannot identify what is causing the alarm to sound, a security guard then searches the employee using a metal detecting wand.

45. While each employee proceeds through the metal detecting process, Defendants require security guards to inspect any bags or personal items the employee is carrying.

46. These security guards are employed by an independent security company that provides these security guards under a contract with Defendants.

47. Defendants do not allow the hourly-paid warehouse workers at the Amazon Fulfillment Center to leave the warehouse until the employees have successfully proceeded through the metal detecting process and have had any bags/personal items searched.

7

48. This mandatory, post-shift, theft-prevention security screening operation routinely takes 10 to 15 minutes to complete, and with delays it can last longer.

49. Defendants have never paid the hourly-paid warehouse employees who have worked at the Amazon Fulfillment Center for the time they have been required to spend proceeding through this mandatory, post-shift, theft-prevention security screening operation.

50. The sole purpose of this mandatory, post-shift, theft-prevention security screening operation is to prevent and reduce employee theft of the merchandise contained within the Amazon Fulfillment Center and thus is integral and indispensible to the hourly-paid warehouse employees' principal work activities of completing customer orders without the loss of Defendants' product.

51. This mandatory, post-shift, theft-prevention security screening operation is solely for the benefit of Defendants through the reduction in employee theft.

52. This mandatory, post-shift, theft-prevention security screening operation does not benefit the hourly-paid warehouse employees who have worked at the Amazon Fulfillment Center.

53. Defendants' screening process is a required job activity for Plaintiffs and each hourly-paid employee at the Amazon Fulfillment Center.

54. Because Defendants pay the overtime-eligible, hourly-paid employees at the Amazon Fulfillment Center based on time clock punches, it is administratively feasible to pay for the time it takes employees, including Plaintiffs, to proceed through this security screening operation.

## II. Uncompensated Work During 30-Minute Meal Periods

55. Defendant deducts thirty minutes of pay per shift from the compensation of the hourly warehouse employees at the Amazon Fulfillment Center.

56. Defendant deducts these thirty minutes of pay per shift for a purported thirty-minute meal break.

57. In actuality, these employees are required to perform mandatory work activities during this thirty-minute time period.

58. Specifically, the hourly employees at the Amazon Fulfillment Center are required to remain at their work locations until the start of their purported thirty-minute meal periods.

59. At the start of these purported meal periods, these employees have to walk to the facility's time clocks to clock out, which can take several minutes.

60. Then, to access the employee break room or to exit the facility, these employees have to proceed through the same anti-theft security screening described in Paragraphs 42 through 47, above.

61. Similar to the end of each shift, this pre-meal-break anti-theft security screening operation solely benefits Defendants, and in no way benefits the hourly warehouse employees at the Amazon Fulfillment Center.

62. As a result of these policies, the hourly warehouse employees at the Amazon Fulfillment Center perform work for approximately fifteen of the uncompensated thirty minutes comprising their purported meal period.

## FACTS PERTAINING TO PLAINTIFFS

**I.  Plaintiff Dollie Suggars**

63. Plaintiff Dollie Suggars began working as an hourly-paid warehouse employee at the Amazon Fulfillment Center in November 2012.

64. Throughout her employment at the Amazon Fulfillment Center, Ms. Suggars worked as a "picker."

65. Ms. Suggars was hired to work at the Amazon Fulfillment Center by Defendants SMX and Staff Management.

66. During her employment at the Amazon Fulfillment Center, Ms. Suggars was jointly employed by Defendants SMX and Staff Management and the other Defendants in this matter, some or all of whom directed her day-to-day work activities within the Amazon Fulfillment Center.

67. Throughout her employment at the Amazon Fulfillment Center, Ms. Suggars was scheduled to work at least 40 hours a week through four shifts beginning at 7:00 AM and lasting until 5:30 PM, minus a 30-minute break.

68. Throughout her employment at the Amazon Fulfillment Center, Ms. Suggars was required to proceed through the post-shift anti-theft security screening operation described in Paragraphs 40 through 54, above, after clocking out at the end of her shift.

69. Ms. Suggars estimates that proceeding through this mandatory, post-shift, anti-theft security screening operation routinely took approximately 10 to 15 minutes or more, resulting in at least 40 minutes of unpaid time above the 40 hours a week that she regularly worked.

10
Case 3:13-cv-00906   Document 1   Filed 09/09/13   Page 10 of 16 PageID #: 10

70. Throughout her employment at the Amazon Fulfillment Center, Ms. Suggars was also required to proceed through the pre-meal-break anti-theft security screening operation described in Paragraphs 55 through 62, above.

71. Ms. Suggars estimates that proceeding through this pre-meal-break anti-theft security screening operation routinely took approximately 10 to 15 minutes or more.

72. Ms. Suggars did not benefit in any way from these mandatory anti-theft security screening operations.

73. Defendants never compensated Ms. Suggars for the time it took for her to proceed through these mandatory anti-theft security screening operations.

## II. Plaintiff Kenya McGaughy

74. Plaintiff Kenya McGaughy began working as an hourly-paid warehouse employee at the Amazon Fulfillment Center in November 2012.

75. Throughout her employment at the Amazon Fulfillment Center, Ms. McGaughy worked as a "picker."

76. Ms. McGaughy was hired to work at the Amazon Fulfillment Center by Defendants SMX and Staff Management.

77. During her employment at the Amazon Fulfillment Center, Ms. McGaughy was jointly employed by Defendants SMX and Staff Management and the other Defendants in this matter, some or all of whom directed her day-to-day work activities within the Amazon Fulfillment Center.

78. Throughout her employment at the Amazon Fulfillment Center, Ms. McGaughy was scheduled to work at least 40 hours a week through four shifts beginning at 7:00 AM and lasting until 5:30 PM, minus a 30-minute break.

11
Case 3:13-cv-00906 Document 1 Filed 09/09/13 Page 11 of 16 PageID #: 11

79. Throughout her employment at the Amazon Fulfillment Center, Ms. McGaughy was required to proceed through the post-shift anti-theft security screening operation described in Paragraphs 40 through 54, above, after clocking out at the end of her shift.

80. Ms. McGaughy estimates that proceeding through this mandatory, post-shift, anti-theft security screening operation routinely took approximately 10 to 15 minutes or more, resulting in at least 40 minutes of unpaid time above the 40 hours a week that she regularly worked.

81. Throughout her employment at the Amazon Fulfillment Center, Ms. McGaughy was also required to proceed through the pre-meal-break anti-theft security screening operation described in Paragraphs 55 through 62, above.

82. Ms. McGaughy estimates that proceeding through this pre-meal-break anti-theft security screening operation routinely took approximately 10 to 15 minutes or more.

83. Ms. McGaughy did not benefit in any way from these mandatory anti-theft security screening operations.

84. Defendants never compensated Ms. McGaughy for the time it took for her to proceed through these mandatory anti-theft security screening operations.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

85. Plaintiffs assert their claims pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the following potential opt-in litigants:

> All hourly-paid employees of Defendants who have worked at the Amazon Fulfillment Center in Murfreesboro, Tennessee since September 9, 2010 and who have been required to proceed through Defendants' anti-theft security screening operation without pay either after their paid shifts or during their unpaid meal periods.

86. Plaintiffs are representatives of a class of Defendants' employees who were not paid for all hours worked as described herein. Plaintiffs have actual knowledge that numerous hourly-paid employees of Defendants were not paid by Defendants for all hours worked as described herein.

87. Plaintiffs and other members of the proposed collective action are similarly situated, as that term is defined under 29 U.S.C. § 216(b) and the associated caselaw, *see, e.g.*, *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567 (6th Cir. 2009), because, *inter alia*, they all were subjected to Defendants' common company practice of not paying overtime-eligible, hourly-paid warehouse employees at the Amazon Fulfillment Center for all hours worked.

88. Collective action treatment of Plaintiffs' FLSA claim is appropriate because Plaintiffs and the putative collective class members have been subjected to the common business practices of the Defendants, and the success of their claims depends on the resolution of common issues of law and fact, including, *inter alia*, (a) whether Defendants' common payroll and timekeeping practices fail to compensate class members for the time they spend proceeding through Defendants' mandatory anti-theft security screening operation, and (b) whether time spent proceeding through this security screening operation, both at the start of each meal period and after each shift, is compensable under the law.

### **VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 201, *et seq*.**

### **COUNT I**
**(Compensation Due for Work Performed Off-the-Clock - 29 U.S.C. §§ 206-207)**

89. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

90. The FLSA requires that covered employees be compensated for every hour worked in a workweek. *See* 29 U.S.C. § 206(b).

91. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 29 U.S.C. § 207(a)(1).

92. Plaintiffs are covered employees entitled to the FLSA's protections.

93. Plaintiffs are not exempt from receiving FLSA overtime benefits because, *inter alia,* they are not "executive," "administrative," or "professional' employees, as those terms are defined under the FLSA. *See* 29 C.F.R. §§ 541.0, *et seq.*

94. Defendants are covered employers required to comply with the provisions of the FLSA.

95. Defendants have violated the FLSA with respect to Plaintiffs by, *inter alia,* failing to compensate Plaintiffs for all hours worked and, with respect to such hours, failing to pay Plaintiffs the legally mandated overtime premium for such work.

96. In violating the FLSA, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

97. Pursuant to the FLSA, specifically 29 U.S.C. § 216(b), Defendants, because they failed to pay employees the required amount of wages at the statutory rate, must reimburse the employees not only for the unpaid wages, but also for liquidated damages in an amount equal to the amount of unpaid wages.

98. Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiffs are entitled to reimbursement of the litigation costs and attorney's fees expended if they are successful in prosecuting an action for unpaid overtime wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and all others similarly situated:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the collective action;

C. A judgment against Defendants and in favor of Plaintiffs and others similarly situated for compensation for all hours worked at a rate not less than the applicable minimum wage as well as the amount of unpaid and underpaid overtime that Defendants have failed and refused to pay in violation of the FLSA, as charged herein;

D. A finding that Defendants' practices at issue in this litigation have violated the FLSA;

E. A finding that Defendants' violations of the FLSA are and/or were willful;

F. An injunction prohibiting Defendants from violating the FLSA;

G. Liquidated damages and pre-judgment interest to the fullest extent permitted under the FLSA;

H. Litigation costs, expenses, and Plaintiffs' attorney's fees to the fullest extent permitted under the FLSA; and,

I. Such other and further relief as this Court deems just and proper.

Date: September 9, 2013                    Respectfully submitted,

                                           /s/ Scott P. Tift
                                           **JERRY E. MARTIN (BPR # 20193)**
                                           **DAVID W. GARRISON (BPR # 24968)**

**SCOTT P. TIFT (BPR # 27592)**
**SETH M. HYATT (BPR # 31171)**
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
shyatt@barrettjohnston.com
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

**PETER WINEBRAKE***
**R. ANDREW SANTILLO***
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone: (215) 884-2491
Facsimile: (215) 884-2492
pwinebrake@winebrakelaw.com
asantillo@winebrakelaw.com
* *Pro Hac Vice* Motion Anticipated

**DAVID O'BRIEN SUETHOLZ***
**J. CHRIS SANDERS***
KIRCHER, SUETHOLZ AND GRAYSON, PSC
515 Park Avenue
Louisville, KY 40208
Telephone: (502) 636-4333
Facsimile: (502) 636-4342
dave@unionsidelawyers.com
jchrissanders@yahoo.com
* *Pro Hac Vice* Motion Anticipated

*Attorneys for Plaintiffs*